IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>vs.<br><br>DANNY JUNIOR BRAVO,<br><br>           Defendant. | 8:13CR138<br><br>FINDINGS AND<br>RECOMMENDATION |

      This matter is before the court on the defendant's, Danny Junior Bravo (Bravo), Motion to Suppress Search Warrant (Filing No. 57).  Bravo is charged in the Indictment, along with defendant Leticia Angela Desman (Desman), with a conspiracy to distribute and possess with intent to distribute methamphetamine (Count I), in violation of 21 U.S.C. § 846, and the possession with intent to distribute methamphetamine (Count II), in violation of 21 U.S.C. § 841(a)(1).  **See** Filing No. 1 - Indictment.  Bravo seeks to suppress the search warrant issued to search Bravo's hotel room and vehicle.  **See** Filing No. 57 - Motion.

      The court held an evidentiary hearing on Bravo's motion on September 18, 2013. Bravo was present for the hearing along with his counsel, Federal Public Defender David R. Stickman.  The United States was represented by Assistant U.S. Attorney Kimberly C. Bunjer.  During the hearing, the court heard argument from Mr. Stickman and Ms. Bunjer.  The court received into evidence an affidavit for a search warrant and a search warrant (Ex. 1).  A transcript of the hearing (TR.) was prepared and filed on September 26, 2013.  **See** Filing No. 72.

**FINDINGS OF FACT**

      On April 2, 2013, Investigator Brandi Brunz (Investigator Brunz) presented a search warrant to a County Judge in Scottsbluff County, Nebraska.  **See** Ex. 1 - Search Warrant, Affidavit for Search Warrant, and Return and Inventory.  In the affidavit for the warrant, Investigator Brunz indicated a confidential informant (CI), who was previously indicted by federal prosecutors and cooperating with law enforcement, informed Investigator Brunz that the CI had been receiving drugs from Bravo since 2010.  ***Id.***

The CI informed Investigator Brunz that Bravo, who lived in Stockton, California, would mail, personally deliver, or send female couriers with narcotics to the CI.  *Id.*  The CI would receive marijuana, cocaine, ecstasy, and methamphetamine.  *Id.*

During the two weeks prior to obtaining the warrant, Investigator Brunz monitored communications between Bravo and the CI.  *Id.*  The CI interpreted Bravo's messages to mean he would make arrangements to deliver at least five ounces of methamphetamine.  *Id.*  The CI suspected Bravo would deliver the methamphetamine personally or send a female courier.  *Id.*  On March 31, 2013, the CI received the following text message from Bravo: "Happi eastr.  N ul b suprisd.  U kno how I am."  *Id.*  The CI interpreted the message to mean Bravo might send a larger shipment of narcotics or Bravo might visit Scottsbluff, Nebraska.  *Id.*

At approximately 8:00 a.m. on April 2, 2013, Investigator Brunz monitored a call between the CI and Bravo.  *Id.*  Bravo indicated he was in Scottsbluff, Nebraska, and wanted to meet after 10:30 p.m. at a local restaurant.  *Id.*  Bravo also told the CI he needed a hotel room reserved.  *Id.*  The CI agreed to meet Bravo and made arrangements for Bravo to stay in a hotel, specifically room 114 at the Comfort Inn.  *Id.*  Investigator Brunz arranged for a controlled delivery of methamphetamine from Bravo at the restaurant.  *Id.*  Prior to the CI's meeting with Bravo, Investigator Brunz confirmed the CI did not have weapons or contraband on the CI's person or in the CI's vehicle.  *Id.*

At approximately 11:11 p.m., the CI made contact with Bravo as well as an unidentified female at the predetermined restaurant.  *Id.*  The unidentified female wore a fanny pack.  *Id.*  As the CI entered the restaurant, the unidentified female exited the restaurant and entered a 2001 Chevy Yukon in the restaurant parking lot.  *Id.*  After around two minutes, the unidentified female exited the Yukon and walked around the parking lot.  *Id.*  As she walked, the unidentified female readjusted the fanny pack and looked at it closely numerous times.  *Id.*  The unidentified female then returned to the restaurant to join the CI and Bravo.  *Id.*  At around 11:33 p.m., all three individuals exited the restaurant.  *Id.*  The CI carried the fanny pack the unidentified female previously wore.  *Id.*  All three individuals entered the CI's car.  *Id.*  After a few minutes, Investigator Brunz witnessed Bravo return the fanny pack to the unidentified female who

2

then exited the car while Bravo and the CI continued to converse. *Id.* Bravo and the unidentified female left the CI at approximately 11:48 p.m. *Id.*

After the controlled delivery, Investigator Brunz met with the CI. *Id.* The CI explained when the unidentified female returned to the restaurant she gave the fanny pack to Bravo and then Bravo gave the fanny pack to the CI. *Id.* The CI removed a package from the fanny pack while in the CI's vehicle and then returned the fanny pack to Bravo. *Id.* The CI gave Investigator Brunz the package which was a long, hard cylindrical object. *Id.* The package tested positive for 4.9 ounces of methamphetamine. *Id.* The CI explained couriers would transport methamphetamines in this form. *Id.*

Later, the CI, while under surveillance, met with Bravo to provide Bravo with a key to the hotel room the CI reserved for Bravo. *Id.* The CI also arranged a time to meet with Bravo to give Bravo payment for the methamphetamine. *Id.* The CI informed Investigator Brunz that the CI believed Bravo would leave for California after receiving the payment. *Id.* Investigator Brunz planned to provide the CI money to pay Bravo and after the payment was made, arrest Bravo. *Id.*

Investigator Brunz's affidavit provided the following information regarding the property or contraband to be searched:

> Contrary to the statutes of the State of Nebraska there is dept [sic] and concealed as hereafter described the following property:
>
> Wherefore your affiant believes there is probable cause that Daniel Bravo and the unidentified female is in possession of the following items.
>
> Your affiant believes these items are concealed or kept in, on, or about the following described vehicle, place, or person. The hotel room number 114 is under the control or custody of Daniel Bravo and the unidentified female, but reserved by the CI. The white 2001 Chevy Yukon (21-F916).

*Id.* Although the affidavit did not include a list of things to be searched, the warrant included the following description of property or contraband:

> - Methamphetamine, marijuana, and other illegal controlled substances, cell phone, cash, or credit cards to pay for his trip to Scottsbluff. Plastic bags, scales, drug paraphernalia, pay/owe sheets, firearms, removable

3

>electronic storage devices, documents or records showing identification and evidence of the trip from California to Nebraska. Your affiant believes that the unidentified female is a co-conspirator in the delivery of the methamphetamine and that evidence of her identity can be located in the hotel room and/or vehicle.
>
>is concealed or kept in, on, or about:
>   - the hotel room located at the Comfort Inn 1902 21st Ave. room number 114 Scottsbluff, Scotts Bluff County, State of Nebraska
>   - 2001 Chevy Yukon (21-F916)
>
>and, that this property is under the control or custody of:
>   - Daniel Bravo and an unidentified female

*Id.*

## LEGAL ANALYSIS

Bravo argues Investigator Brunz's application and affidavit did not set forth sufficient facts and circumstances to justify issuance of the search warrant. **See** Filing No. 59 - Brief p. 3. Bravo contends although the warrant sets forth property to be seized at a particular location, the application and affidavit do not set forth the place to be searched or items to be seized. *Id.* at 3-4. Bravo also argues Investigator Brunz did not set forth sufficient information regarding the reliability of the confidential informant. *Id.* at 5. Lastly, Bravo argues the good faith exception is inapplicable because Investigator Brunz's omissions were obvious. *Id.*

The Fourth Amendment declares: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. When reviewing the sufficiency of an affidavit "[a] totality of the circumstances test is used to determine whether probable cause exists. Courts should apply a common sense approach and, considering all relevant circumstances, determine whether probable cause exists." ***United States v. Hager***, 710 F.3d 830, 836 (8th Cir. 2013); **see also** ***United States v. Rodriguez***, 711 F.3d 928, 936 (8th Cir. 2013) ("Instead of reviewing an affidavit in a hypertechnical fashion, courts should apply a common sense approach.") (internal quotation marks omitted). "[J]udges may draw reasonable

inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant." *Hager*, 710 F.3d at 836. "Probable cause is established when there is a fair probability that the object of the search warrant may be found in the place to be searched." *United States v. Romo-Corrales*, 592 F.3d 915, 919 (8th Cir. 2010) (internal quotation omitted). As the Supreme Court stated in *Illinois v. Gates*:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). Courts provide "great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (alteration in original). When relying on an affidavit to establish probable cause, "the probable cause determination must be based upon only that information which is found within the four corners of the affidavit." *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009). "[R]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Leon*, 468 U.S. 897, 915 (1984) (**citing** *Gates*, 462 U.S. at 239).

"An informant's tip can be sufficient to establish probable cause if the informant has a track record of supplying reliable information or if the tip is corroborated by independent evidence." *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002). "An informant may also prove himself to be a reliable source for law enforcement by providing predictive information about a meeting time or place." *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013). An affidavit for a warrant need not contain "an averment of previous reliability" of an informant. *United States v. Harris*, 403 U.S. 573, 581-82 (1971); **see also** *United States v. Williams*, 477 F.3d 554, 559-60 (8th Cir. 2007) (clarifying information from a confidential informant may be sufficient to support a finding of probable cause even if the informant's criminal history is not provided to the magistrate issuing the warrant).

Approaching this matter with a common sense approach, and not a hypertechnical fashion, the court finds, after reviewing the totality of the circumstances, probable cause existed to issue the search warrant. Investigator Brunz provided a detailed timeline of criminal activity between the CI and Bravo. Investigator Brunz's reliance on the CI's information, and ultimately the issuing judge's reliance on the information in finding probable cause to issue the warrant, was proper. First, the CI provided predictive information about a meeting place and time. The CI stated Bravo would meet the CI at a restaurant to deliver methamphetamine and Bravo did in fact meet the CI at the restaurant and deliver methamphetamine. Second, Investigator Brunz corroborated the CI's information and monitored both the CI's conversations with Bravo and personal contact with Bravo in Scottsbluff. The exclusion of the CI's track record does not undermine the reliability of the CI's information.

Additionally, although Investigator Brunz made a mistake in the affidavit by omitting a description of things to be seized and providing a limited description of the places to be searched, such omissions do not detract from the probable cause supporting issuance of the warrant. Investigator Brunz's mistake appears to be an innocent mistake made while in the rush to obtain a warrant before Bravo left for California. **See *United States v. Capozzi***, 347 F.3d 327, 332 (1st Cir. 2003) (excusing an officer's "omissions and misstatements" because such mistakes were not material and made while the officer "rushed to prepare an affidavit in the midst of a developing investigation"). The omission from the affidavit of the things to be seized or place to be searched was not a material omission. The information in the warrant provided there was a fair probability items related to identity and methamphetamine would be found in Bravo's hotel room or vehicle.

Furthermore, the warrant which accompanied the affidavit clearly provided a specific list of things to be seized at a particular location. The issuing judge obviously reviewed the warrant accompanying the affidavit, as the judge's signature on the warrant evidences. **See *United States v. Hamilton***, 591 F.3d 1017, 1028 (8th Cir. 2010) ("The issuing judge signed both the warrant and the affidavit, demonstrating both that the [issuing] judge approved the search with reference to the affidavit and that the judge had the opportunity to limit the scope of the search."). Therefore, reviewing the

affidavit in conjunction with the warrant, the issuing judge could properly conclude probable cause existed to search for items listed in the warrant.

In the event the omissions from the affidavit rendered the warrant invalid, suppression of evidence obtained pursuant to the warrant is unnecessary. Generally, "evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (citations omitted). "Because exclusion is a prophylactic remedy, however, there are some instances where a Fourth Amendment violation does not trigger the exclusionary rule." *Id.* The *Leon* good faith exception is one such instance. See *United States v. Leon*, 468 U.S. 897, 920 (1984). Under *Leon*, even if the warrant is subsequently invalidated, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope[,]" the exclusionary rule is inapplicable. *Leon*, 468 U.S. at 920. There are four circumstances which would preclude a finding of good faith:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Cannon*, 703 F.3d at 412 (**quoting** *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)).

Investigator Brunz reasonably relied on the search warrant. The warrant provided with particularity the things and places to be searched even though the affidavit omitted such information. There is no evidence anything in the affidavit was false or the issuing judge wholly abandoned the judge's judicial role. As to the third and fourth exceptions, there was nothing in the affidavit or warrant that would render any officer's good faith reliance on the warrant entirely unreasonable. The facts provided in the affidavit were witnessed or corroborated by officers and the warrant included all

necessary information required to execute a warrant. The warrant was not facially deficient. Therefore, even if there were constitutional infirmities with the affidavit and issuance of the warrant, the *Leon* good faith exception applies and suppression is not required.

**IT IS RECOMMENDED TO CHIEF JUDGE LAURIE SMITH CAMP that**:

Danny Junior Bravo's Motion to Suppress Search Warrant (Filing No. 57) be denied.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 10th day of October, 2013.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge